IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-21-D

| | | |
|---|---|---|
| JOAQUIN SUAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SOUTHERNCARLSON, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On March 11, 2022, Joaquin Suarez ("Suarez" or "plaintiff"), proceeding pro se and in forma pauperis, filed a complaint against SouthernCarlson, Inc. ("SouthernCarlson" or "defendant") alleging national origin and age discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq. [D.E. 1, 2, 5–7]. On June 9, 2023, SouthernCarlson moved for summary judgment [D.E. 42] and filed a memorandum in support [D.E. 43], a statement of material facts [D.E. 44], and an appendix [D.E. 45]. On June 23, 2023, the court notified Suarez of SouthernCarlson's motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 46]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On July 17, 2023, Suarez responded in opposition to SouthernCarlson's motion [D.E. 47] and filed a memorandum of law [D.E. 48], an opposing statement of material facts [D.E. 49], and an appendix [D.E. 50]. On July 31, 2023, SouthernCarlson replied [D.E. 51], moved to strike Suarez's statement of material facts and appendix [D.E. 52, 54], and filed memoranda in support of both motions to strike [D.E. 53, 55]. As explained below, the court grants in part and denies in part SouthernCarlson's motions to strike and grants SouthernCarlson's motion for summary judgment.

I.

SouthernCarlson distributes fastening and packaging machines. See Def.'s Statement of Material Facts ("DSMF") ¶ 1.[1] On December 20, 2018, SouthernCarlson hired Suarez, a 52 year old Hispanic male, as a service technician at its Wilmington, North Carolina store ("the Wilmington store"). See id. at ¶¶ 2, 4; [D.E. 7-3] 2. SouthernCarlson later transitioned Suarez into a regular, full-time customer retail role. See DSMF ¶ 8; [D.E. 45-3] ¶ 7.

In 2018, Oscar Zeno ("Zeno") managed the Wilmington store. See DSMF ¶ 6. Suarez reported directly to Zeno. See id. at ¶ 7. In September 2019, Zeno took a leave of absence from SouthernCarlson. See id. at ¶ 9. In response, SouthernCarlson's Area Branch Manager Zach Cook ("Cook") assigned Zeno's job duties to the remaining employees at the Wilmington store until SouthernCarlson could hire a temporary manager. Compare id. at ¶ 10, with PSMF ¶ 10.[2] In November 2019, SouthernCarlson assigned the Wilmington store's managerial duties to Joseph Arena ("Arena"), a white male over age 40, who served as the branch manager of SouthernCarlson's Myrtle Beach, South Carolina store ("the Myrtle Beach store"). See DSMF ¶ 11; [D.E. 45-3] ¶ 9. Arena divided his time between the Wilmington and Myrtle Beach stores. Compare DSMF ¶ 12,

---

[1] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); see Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. Mar. 15, 2017) (unpublished); Fed. R. Civ. P. 56(e)(2). Suarez's statement of material facts only controverts some paragraphs of SouthernCarlson's statement of material facts. See Pl.'s Statement of Material Facts ("PSMF") [D.E. 49]. Thus, Suarez has admitted the remaining facts.

[2] Suarez contests this fact but cites no admissible evidence in the record rebutting SouthernCarlson's statement. Accordingly, the court accepts SouthernCarlson's statement. See Local Civ. R. 56.1(a)(4); Howard, 262 F. Supp. 3d at 329 n.1.

2

with PSMF ¶ 12. Suarez reported directly to Arena once Arena became manager of the Wilmington store. See DSMF ¶ 13.

In April 2020, SouthernCarlson engaged Darrell Vicks ("Vicks") to provide temporary technician services in response to Suarez's requests for additional assistance with warehouse and tool repairs at the Wilmington store. Compare id. at ¶ 14, with PSMF ¶ 14; see [D.E. 45-3] ¶ 13. SouthernCarlson also engaged Cody Arena, a former contractor at the Myrtle Beach store, to provide temporary service technician services to the Wilmington store. Compare DSMF ¶ 15, with PSMF ¶ 15. At no time during Suarez's employment with SouthernCarlson did SouthernCarlson grant Suarez the authority to hire, terminate, or manage other employees or offer Suarez a management position. See DSMF ¶ 16. During Arena's tenure as manager of the Wilmington store, Suarez refused to accept Arena as manager, refused to perform certain job duties, and often created conflict within the Wilmington store. Compare id. at ¶ 19, with PSMF ¶ 19. SouthernCarlson reprimanded Suarez for his behavior. Compare DSMF ¶¶ 18–19, with PSMF ¶¶ 18–19.

On April 24, 2020, due to the COVID-19 pandemic, SouthernCarlson furloughed Suarez. Compare DSMF ¶ 20, with PSMF ¶ 20. Ultimately, SouthernCarlson permanently reduced its workforce. See [D.E. 45-3] ¶ 18; compare DSMF ¶ 21, with PSMF ¶ 21. On July 1, 2020, SouthernCarlson terminated Suarez's employment as part of the reduction in force. See DSMF ¶ 24; [D.E. 45-3] ¶ 18. SouthernCarlson did not hire anyone to replace Suarez. Compare DSMF ¶ 33, with PSMF ¶ 33. On January 7, 2021, Suarez filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). See [D.E. 7-3]. On November 5, 2021, the EEOC notified Suarez of his right to sue. See [D.E. 7-1].

II.

SouthernCarlson contends that Suarez's Statement of Material Facts and Appendix violate Local Civil Rule 56.1(a)(4) and Federal Rule of Civil Procedure 56(c) by lacking "citations to the record, controlling authority, sworn affidavits, or other [admissible] evidence." [D.E. 53] 2–3; see

3

[D.E. 55] 2. Moreover, SouthernCarlson argues Suarez's Appendix "contains copious amounts of inadmissible evidence." [D.E. 55] 2. Accordingly, SouthernCarlson moves to strike these documents entirely. See [D.E. 52, 54].

A court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although granting a motion to strike is generally disfavored, the court has such discretion. See Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001); F.D.I.C. v. Willetts, 882 F.Supp.2d 859, 870 (E.D.N.C. 2012).

"Each statement by the [summary judgment] movant or opponent . . . must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(c)." Local Civ. R. 56.1(a)(4). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" with citations "to particular parts of materials in the record" which are "admissible evidence." Fed. R. Civ. P. 56(c)(1)(A)–(B). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The court assumes without deciding that a party may move to strike filings other than pleadings.[3] "In resolving a motion to strike, the [c]ourt should use 'a scalpel, not a butcher knife'

---

[3] The court acknowledges the debate surrounding motions to strike non-pleadings. Compare Revak v. Miller, No. 7:18-CV-206, 2021 WL 2188674, at *4–6 (E.D.N.C. May 28, 2021) (unpublished), and BlackRock Eng'rs, Inc. v. Duke Energy Progress, LLC, No. 7:15-CV-250, 2019 WL 4267863, at *4–5 (E.D.N.C. Sept. 9, 2019) (unpublished), and Martinez-Hernandez v. Butterball, L.L.C., No. 5:07-CV-174, 2011 WL 4460332, at *7–14 (E.D.N.C. Sept. 26, 2011) (unpublished), and Smith v. Martin, No. 5:10-CV-248, 2011 WL 3703255, at *3 (E.D.N.C. Aug. 23, 2011) (unpublished), and Christian v. Vought Aircraft Indus., Inc., No. 5:09-CV-186, 2010 WL 4065482, at *4–6 (E.D.N.C. Oct. 15, 2010) (unpublished), aff'd, 439 F. App'x 272 (4th Cir. 2011) (per curiam) (unpublished), with Weber v. Specialized Loan Servicing, LLC, 341 F.R.D. 214, 216 (E.D.N.C. 2022), and Melvin v. Soc. Sec. Admin., 126 F. Supp. 3d 584, 596 (E.D.N.C. 2015), aff'd sub nom. Melvin v. Soc. Sec. Admin. of U.S., 686 F. App'x 230 (4th Cir. 2017) (per curiam) (unpublished), and King. v. N.C. Dep't of Pub. Safety, No. 5:12-CV-152, 2014 WL 69601, at *1–4 (E.D.N.C. Jan. 8, 2014) (unpublished). The court need not resolve the debate. Regardless of how the court treats the motions to strike, the outcome is the same. The court considers the admissible portions of Suarez's filings and does not consider the inadmissible portions.

4

to strike portions of an affidavit that do not satisfy" Federal Rule of Civil Procedure 56(c). Dove v. Johnson, No. 4:20-CV-154, 2022 WL 11282218, at *2 (E.D.N.C. Oct. 19, 2022) (unpublished) (quoting Upshaw v. Ford Motor Co., 576 F.3d 576, 593 (6th Cir. 2009)); see, e.g., BlackRock Eng'rs, Inc., 2019 WL 4267863, at *4–5 (striking only parts of an affidavit that contained inadmissible evidence). Thus, the court denies SouthernCarlson's motions to the extent SouthernCarlson moves to strike Suarez's entire Statement of Material Facts and Appendix.

The remaining portions of SouthernCarlson's motions seek to strike the portions of Suarez's filings that rely on unsupported allegations or inadmissible evidence. The court agrees with SouthernCarlson and declines to consider such portions of Suarez's filings. See Fed. R. Civ. P. 56(e)(2); Local Civ. R. 56.1(a)(4); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Howard, 262 F. Supp. 3d at 329 n.1. Accordingly, the court grants in part SouthernCarlson's motions and considers only the admissible evidence Suarez produces to support his claims.

III.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this

5

determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Suarez alleges SouthernCarlson failed to promote him, harassed him, and terminated his employment because of his national origin in violation of Title VII. See Compl. 2.[4] SouthernCarlson responds that Suarez lacks direct evidence of national origin discrimination and has not established a prima facie case of national origin discrimination. See [D.E. 43] 7–18. SouthernCarlson also argues it terminated Suarez for legitimate nondiscriminatory reasons and that Suarez lacks evidence these reasons were pretextual. See id. at 21–25. SouthernCarlson also alleges that it did not create a hostile work environment. See id. at 15–18.

---

[4] Suarez alleges race and national origin discrimination in his complaint. See Compl. 2. The EEOC, however, advised Suarez to file a charge of national origin discrimination "because Hispanic/Mexican wasn't considered a Race." [D.E. 48] 3. Accordingly, Suarez's EEOC charge alleged national origin discrimination, not race discrimination. See [D.E. 7-3]. The content of Suarez's EEOC charge determines the scope of his right to maintain a Title VII claim in court. See, e.g., Hentosh v. Old Dominion Univ., 767 F.3d 413, 416–17 (4th Cir. 2014), abrogated on other grounds by Fort Bend County v. Davis, 139 S. Ct. 1843 (2019); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002). And, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated on other grounds by Davis, 139 S. Ct. 1843; see Bonds v. Leavitt, 629 F.3d 369, 379 (4th Cir. 2011). Thus, the court declines to consider Suarez's race discrimination claim.

6

A.

Title VII prohibits an employer from taking adverse employment action against an employee because of such individual's national origin. See 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII violation in two ways. First, a plaintiff can show through direct evidence that illegal discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). If a plaintiff lacks direct evidence (as in this case), a plaintiff can alternatively proceed under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

The McDonnell Douglas framework consists of three steps: "(1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to failure to hire, termination, and retaliation claims under Title VII. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004); Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997), abrogated in part on other grounds by Gilliam v. S.C. Dep't of Juvenile Just., 474 F.3d 134 (4th Cir. 2007).

To establish a prima facie case concerning employment termination, Suarez must show that (1) he was a member of a protected class, (2) he was discharged, (3) he was fulfilling his employer's legitimate expectations at the time of his discharge, and (4) he was treated differently than a similarly situated employee outside the protected class. See, e.g., Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 626 (4th Cir. 2015), abrogated in part on other grounds by Bing v. Brivo Sys., LLC,

7

959 F.3d 605, 611–12 (4th Cir. 2020); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Tahir v. Sessions, No. 5:16-CV-781, 2017 WL 1735158, at *4 (E.D.N.C. May 2, 2017) (unpublished), aff'd, 703 F. App'x 211 (4th Cir. 2017) (per curiam) (unpublished).

Suarez has produced admissible evidence that he was a member of a protected class, and he was discharged. See, e.g., DSMF ¶ 2; [D.E. 45-2] 55, 76. Suarez has not, however, produced admissible evidence demonstrating he was meeting his employer's legitimate expectations at the time of his termination. Instead, the record reflects that Suarez refused to accept Arena as the Wilmington store manager, refused to perform certain duties, and often created conflict within the Wilmington store. Compare DSMF ¶ 19, with PSMF ¶19. SouthernCarlson reprimanded Suarez for his behavior before Suarez's furlough. Compare DSMF ¶¶ 18–19, with PSMF ¶¶ 18–19. Suarez's speculation regarding his own performance does not suffice to meet his burden. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Kariuki v. Dep't of Ins., No. 5:18-CV-341, 2021 WL 3781879, at *4 (E.D.N.C. Aug. 25, 2021) (unpublished), appeal dismissed sub nom. Kariuki v. N.C. Dep't of Ins., No. 21-2068, 2022 WL 17412872 (4th Cir. 2022) (per curiam) (unpublished).

Suarez also has not produced admissible evidence demonstrating he was treated differently than a similarly situated employee outside the protected class. Suarez testified that SouthernCarlson fired him but retained Cody Arena and Vicks, who are white. See [D.E. 45-2] 66, 69–70. Vicks and Cody Arena, however, were not similarly situated to Suarez. Vicks and Cody Arena worked as temporary service technicians while Suarez worked as a full-time employee in a customer retail role, which is a different position with different qualifications and duties. See id. at 68; [D.E. 45-3] 3. Absent evidence of a comparator, Suarez's claim fails. See, e.g., McDonnell Douglas, 411 U.S. at 804; Haywood v. Locke, 387 F. App'x 355, 359–60 (4th Cir. 2010) (per curiam) (unpublished);

8

Iskander v. Dep't of Navy, 116 F. Supp. 3d 669, 679–80 (E.D.N.C.), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Accordingly, the court grants SouthernCarlson's motion for summary judgment on Suarez's national origin termination claim.

B.

To establish a prima facie case of national origin discrimination for failure to promote, Suarez must show that: "(1) []he is a member of a protected group, (2) there was a specific position for which []he applied, (3) []he was qualified for that position, and (4) [the defendant] rejected h[is] application under circumstances that give rise to an inference of discrimination." Williams, 370 F.3d at 430; see McDonnell Douglas, 411 U.S. at 802; Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). If a plaintiff fails to apply for a job, he "may still carry his burden of proof if he can demonstrate that he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied." Brown v. McLean, 159 F.3d 898, 902–03 (4th Cir. 1998) (quotation omitted); see Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1451 (4th Cir. 1990); United States v. Gregory, 871 F.2d 1239, 1242 (4th Cir. 1989). If a plaintiff proceeds under this theory, he must prove "he would have applied for the job had it not been for those practices." Brown, 159 F.3d at 903; Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 368 (1977).

As for Suarez's failure to promote claim, Suarez alleges that after Zeno left the company, SouthernCarlson left Suarez in charge of the Wilmington store. See Compl. 2. Suarez testified that despite his repeated requests, SouthernCarlson did not promote or pay him for these new responsibilities. See [D.E. 45-2] 6, 7, 25. SouthernCarlson responds that Suarez never formally applied to become a manager in Wilmington. See DSMF ¶ 17; PSMF ¶ 17; [D.E. 45-2] 14–15, 100–01. Moreover, SouthernCarlson contends the manager position in Wilmington was never open. See [D.E. 43] 9.

9

When an employer "fails to make its employees aware of vacancies," courts relax the requirement that plaintiff apply for a specific position. Williams, 370 F.3d at 431. Courts also relax the application requirement when an employer seeks specific candidates for promotion, rather than having anyone apply for a position. See, e.g., Box v. A&P Tea Co., 772 F.2d 1372, 1376–77 (7th Cir. 1985). Accordingly, Suarez has demonstrated a genuine issue of material fact concerning whether there was a specific position that was open and for which he applied. See, e.g., Taylor v. Millenium Corp., No. 1:15-CV-1046, 2016 WL 927185, at *5 (E.D. Va. Mar. 4, 2016) (unpublished).

As for whether Suarez was qualified to manage the Wilmington store, the record lacks any admissible evidence that Suarez was qualified to manage the Wilmington store. Suarez testified that Cook left Suarez in charge of the Wilmington store when Zeno left. See [D.E. 45-2] 33. The record reflects, however, that every SouthernCarlson employee at the Wilmington store temporarily absorbed some of Zeno's duties when Zeno left. See [D.E. 45-3] ¶ 10. SouthernCarlson did not assign Suarez to perform all of Zeno's duties. See id. Moreover, once Arena arrived at the Wilmington store, Arena clarified that Suarez was not to perform tasks outside tool repair and customer service. See [D.E. 45-4] 4. Thus, the record belies Suarez's assertions that he managed the Wilmington store or was qualified for promotion to that position. See, e.g., Williams, 370 F.3d at 431 n.6; Benson v. Vaughn Indus. LLC, 450 F. Supp. 3d 655, 665 (E.D.N.C. 2020).

Suarez also fails to cite admissible evidence that SouthernCarlson rejected his application under circumstances that give rise to an inference of national origin discrimination. Rather, the record reflects that when SouthernCarlson loses a manager at one of its stores, the company temporarily sends a "floating manager" (i.e., the manager from the closest location) to supervise the store. [D.E. 45-2] 20. Arena was the Wilmington store's floating manager because he was also serving as the manager of the Myrtle Beach store. See id. at 19. Thus, SouthernCarlson selected the nearest store manager to supervise the Wilmington store. See also [D.E. 45-3] ¶¶ 9–10. Suarez does

not cite any admissible evidence that he was more qualified than Arena to manage the Wilmington store. Suarez also does not cite any admissible evidence demonstrating that SouthernCarlson considered national origin when applying the floating manager policy. Accordingly, the court grants SouthernCarlson's motion for summary judgment on Suarez's failure to promote claim. See, e.g., Benson, 450 F. Supp. 3d at 666.

C.

Alternatively, SouthernCarlson has produced evidence that it refused to promote and eventually terminated Suarez for legitimate, nondiscriminatory reasons. "[T]he McDonnell Douglas presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993). "The defendant must clearly set forth, through the introduction of admissible evidence," legitimate, nondiscriminatory reasons for the adverse employment action. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 255 (1981).

As for Suarez's failure to promote claim, after Zeno left the company, SouthernCarlson adhered to its floating-manager policy until it found a permanent replacement. See [D.E. 45-2] 20. Thus, SouthernCarlson has met its burden to produce admissible evidence of a legitimate, non-discriminatory reason for not promoting Suarez.

As for Suarez's termination, in March 2020, COVID-19 hit. In April 2020, SouthernCarlson furloughed Suarez due to reduced work. See DSMF ¶ 20; [D.E. 45-3] ¶ 17; [D.E. 45-5]. At that time, SouthernCarlson hoped it would "be able to restore [Suarez's] prior position . . . on or around June 29, 2020." [D.E. 45-5]; see [D.E. 45-3] ¶ 18. The pandemic, however, forced SouthernCarlson to permanently reduce its workforce. See [D.E. 45-3] ¶ 18. After rigorously analyzing all employees, business necessities, individual job skills and performance, and the job skills needed for ongoing operations, SouthernCarlson terminated Suarez's employment on July 1, 2020, as part of its reduction in workforce. See id.

11

"[A]n employer lawfully can rely on [business needs, technical skills, qualifications, and performance] in making an employment decision." Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 743 (E.D.N.C. 2012); see Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514–15 (4th Cir. 2006), abrogated in part on other grounds by Gross, 557 U.S. at 177–80; Mereish v. Walker, 359 F.3d 330, 335 (4th Cir. 2004), abrogated in part on other grounds by Gross, 557 U.S. at 177–80; Fisher v. Asheville-Buncombe Tech. Cmty. Coll., 857 F. Supp. 465, 469 (W.D.N.C. 1993). Thus, SouthernCarlson has met its burden to produce admissible evidence of legitimate, nondiscriminatory reasons for Suarez's termination.

Once SouthernCarlson has met its burden to demonstrate a legitimate, nondiscriminatory reason for failing to promote Suarez and then terminating his employment, the burden shifts to Suarez to demonstrate a genuine issue of material fact that SouthernCarlson's reasons were pretextual and that SouthernCarlson really made its decisions because of Suarez's national origin. See, e.g., Gross, 557 U.S. at 180; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141–49 (2000); Burdine, 450 U.S. at 253; Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725–26 (4th Cir. 2019); Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Warch, 435 F.3d at 514–15; Mereish, 359 F.3d at 334; King, 328 F.3d at 150–54; Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992).

A plaintiff demonstrates pretext by showing that the defendant's proffered "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [national origin] discrimination." Mereish, 359 F.3d at 336 (quotation omitted); see Reeves, 530 U.S. at 147; Burdine, 450 U.S. at 256; Wood, 914 F. Supp. 2d at 740. In analyzing pretext, the "crucial issue" is whether "an unlawfully discriminatory motive for a defendant's conduct [exists], not the wisdom or folly of its business judgment." Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995). Speculation about pretext does not suffice. See, e.g., Mereish, 359 F.3d at 336–39. Likewise, a plaintiff's view that he was performing well does not suffice. See King, 328

12

F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067. Moreover, this court does not sit "to second guess the wisdom of business decisions." E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); see Mereish, 359 F.3d at 339. "Duty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked with authority to strip employers of their basic business responsibilities." Hux, 451 F.3d at 315. Rather, to prevail, Suarez must demonstrate that his national origin "was the 'but-for' cause of the employer's adverse decision." Gross, 557 U.S. at 176.

Suarez fails to demonstrate a genuine issue of material fact concerning SouthernCarlson's legitimate reasons for not promoting Suarez and then terminating him. Other than Suarez's own opinion, the record lacks any admissible evidence that SouthernCarlson's reasons for not promoting Suarez and then terminating him are "unworthy of credence." Burdine, 450 U.S. at 256. For example, Suarez has not produced any admissible evidence that the pandemic did not affect SouthernCarlson or that SouthernCarlson did not need to permanently reduce its workforce. Moreover, SouthernCarlson management never commented on Suarez's national origin. See [D.E. 45-2] 54–57. Furthermore, although Suarez testified that he overheard Arena tell Vicks that Arena was "looking for excuses to fire [Suarez]," [D.E. 45-2] 85, that comment does not concern Suarez's national origin and "create[s] only a weak issue of fact as to whether the employer's reason was untrue." Reeves, 530 U.S. at 148. And, more importantly, Suarez does not cite any admissible evidence that it was Arena who made the decision to terminate his employment. Rather, the record demonstrates SouthernCarlson furloughed and then terminated Suarez through its human resources department after upper-level management made company-wide determinations. See [D.E. 45-3] ¶ 18; [D.E. 45-5]. Suarez merely speculates that Arena made these decisions. See [D.E. 45-2] 66. Thus, Suarez has failed to demonstrate a genuine issue of material fact that SouthernCarlson's reasons were pretextual. Accordingly, the court grants SouthernCarlson's motion for summary judgment on Suarez's Title VII claims.

13

D.

Suarez alleges "harassment and abuses." Compl. 3. The court construes Suarez to assert a hostile work environment claim based on his national origin. Accordingly, Suarez must show that (1) he experienced unwelcome conduct, (2) the conduct was based on his national origin, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 228–29 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Fox v. Gen. Motors Corp., 247 F.3d 169, 175–76 (4th Cir. 2001); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished). An employee also must show that his protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Gilliam, 474 F.3d at 142.

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to

14

determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

In doing so, the court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Harris, 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds, 629 F.3d at 385–86; Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006), abrogated in part on other grounds by Gross, 557 U.S. at 177–80; see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker, 775 F.3d at 207–10; Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

Suarez testified that on the day he was furloughed, he heard Arena say New York is a "shit hole" that is "full of fucking rats" and "cucarachas." [D.E. 45-2] 83, 85. Suarez interpreted Arena's

comments to be about Suarez and to concern his national origin. See id. Suarez cites no other evidence or incidents of unwelcome conduct based on his national origin.[5]

"In a perfect world, each workplace would be entirely harmonious and no . . . co-worker would ever make an insensitive comment, irritate a colleague, or engage in a petty slight." Iskander, 116 F. Supp. 3d at 677. "Common experience and collective wisdom teach, however, that people are not angels." Ali v. WorldWide Language Res., LLC, ___ F. Supp. 3d ___, 2023 WL 5120224, at *11 (E.D.N.C. Aug. 9, 2023). "Congress and the Supreme Court . . . have made clear that Title VII does not require . . . a utopian workplace in order for an employer to avoid liability for a hostile work environment." Iskander, 116 F. Supp. 3d at 677. Arena's comment was inappropriate. Nonetheless, even viewing the record in the light most favorable to Suarez, no rational jury could find the utterance sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment under Title VII. See, e.g., Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; Irani, 767 F. App'x at 415–17; Bonds, 629 F.3d at 385–86; cf. Boyer-Liberto, 786 F.3d at 277–81; Okoli, 648 F.3d at 220–22. Accordingly, the court grants SouthernCarlson's motion for summary judgment on Suarez's hostile work environment claim.

E.

Suarez alleges SouthernCarlson terminated his employment based on his age in violation of the ADEA. See Compl. 2–3. SouthernCarlson responds that Suarez lacks direct evidence of age discrimination and has not established a prima facie case. See [D.E. 43] 15–21. SouthernCarlson

---

[5] In his deposition, Suarez also testified he was "harass[ed] and abuse[d]" by SouthernCarlson management because "they all knew that [he] was doing two job[s] at the same time[,]" but management never gave him a raise or a promotion. [D.E. 45-2] 33. Suarez does not connect this alleged abuse to his national origin. See id. at 54–56; cf. Gilliam, 474 F.3d at 142; Ocheltree, 335 F.3d at 338. Thus, this contention adds nothing to Suarez's hostile work environment claim.

16

also argues it terminated Suarez for a legitimate, nondiscriminatory reason and that Suarez lacks evidence this reason was pretextual. See id. at 21–24.

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish an ADEA claim in two ways. First, an employee may produce direct evidence showing that age discrimination motivated an employer's adverse employment action. See, e.g., Gross, 557 U.S. at 177–78; Reeves, 530 U.S. at 141–49; Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d at 334. Second, an employee may proceed under the McDonnell Douglas burden-shifting framework. See, e.g., Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d at 334; Smith, 618 F.2d at 1066–67.

Suarez has no direct evidence of age discrimination and proceeds under the McDonnell Douglas framework. To establish a prima facie case of disparate treatment under the ADEA, Suarez must show that (1) he was a member of the protected class, i.e., "individuals who are at least 40 years of age," 29 U.S.C. § 631 (a); (2) he was meeting his employer's legitimate expectations at the time of the adverse employment action; (3) the employer took adverse employment action against him; and (4) after the adverse employment action, he was replaced by someone of comparable qualifications who was substantially younger. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Hill, 354 F.3d at 285; Howard, 262 F. Supp. 3d at 335; Wood, 914 F. Supp. 2d at 739–40.

Suarez was over 40 years old, and he was discharged. See, e.g., DSMF ¶ 2; [D.E. 45-2] 7, 76. Even viewing the record in the light most favorable to Suarez, however, Suarez has not produced admissible evidence demonstrating he was meeting his employer's legitimate expectations at the time of his termination. Instead, the record reflects that Suarez refused to accept Arena as the Wilmington store manager, refused to perform certain duties, and often created conflict within the

17

Wilmington store. Compare DSMF ¶ 19, with PSMF ¶ 19. SouthernCarlson reprimanded Suarez for his behavior before Suarez's furlough. Compare DSMF ¶¶ 18–19, with PSMF ¶¶ 18–19. Suarez's speculation regarding his own performance does not suffice to meet his burden. See King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1066; Kariuki, 2021 WL 3781879, at *4.

Suarez also has failed to produce admissible evidence demonstrating that "he was replaced by someone of comparable qualifications who was substantially younger." Wood, 914 F. Supp. 2d at 740; see O'Connor, 517 U.S. at 310–13. Suarez alleges that SouthernCarlson fired him and hired two "white American younger guys to replace me." Compl. 3. Specifically, Suarez alleges SouthernCarlson hired Vicks and Cody Arena to replace him. See [D.E. 7-4] 4. The record demonstrates, however, that SouthernCarlson hired Vicks to provide temporary technician services in response to Suarez's requests for additional help in the Wilmington store. See [D.E. 45-2] 52–53 ("Vicks was hired as a temporary assistant after I was begging all the manager[s] to get me some help . . . ."). Cody Arena worked out of SouthernCarlson's Myrtle Beach store and only provided support to the Wilmington store as necessary. See DSMF ¶ 15; [D.E. 45-3] ¶¶ 14–15. Vicks and Cody Arena worked as temporary service technicians while Suarez worked as a full-time employee in a customer retail role, which is a different position with different qualifications. See [D.E. 45-2] 68; [D.E. 45-3] ¶ 15. After SouthernCarlson terminated Suarez's employment, SouthernCarlson did not fill Suarez's position. Compare DSMF ¶ 33, with PSMF ¶ 33.

In opposition to this conclusion, Suarez testified that SouthernCarlson retained Vicks. Suarez, however, has not produced admissible evidence that Vicks replaced Suarez. Instead, the record reflects Suarez needed Vicks to fill a different role so that Suarez could perform his own job. See [D.E. 45-2] 52. Suarez also testified that SouthernCarlson hired Cody Arena as a full-time employee the day after SouthernCarlson furloughed Suarez, but Suarez's testimony was based on speculation and hearsay, not personal knowledge. See [D.E. 45-2] 69. Accordingly, Suarez has not

18

produced admissible evidence establishing his prima facie case of age discrimination. Thus, the court grants SouthernCarlson summary judgment on Suarez's age discrimination claim.

Alternatively, SouthernCarlson produced admissible evidence of its legitimate, nondiscriminatory reason for terminating Suarez. Suarez has failed to demonstrate a genuine issue of material fact that SouthernCarlson's reason was pretextual. Accordingly, the court grants SouthernCarlson's motion for summary judgment on Suarez's ADEA claim.

IV.

In sum, the court GRANTS IN PART and DENIES IN PART defendant's motion to strike plaintiff's statement of material facts [D.E. 52], GRANTS IN PART and DENIES IN PART defendant's motion to strike plaintiff's appendix [D.E. 54], and GRANTS defendant's motion for summary judgment [D.E. 42]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 27 day of October, 2023.

JAMES C. DEVER III
United States District Judge